O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NANCY ANN CALVEY,                ) Case No. CV 12-0472-JPR
                                 )
                Plaintiff,       )
                                 )
        vs.                      ) MEMORANDUM OPINION AND ORDER
                                 ) AFFIRMING THE COMMISSIONER
MICHAEL J. ASTRUE,               )
Commissioner of the Social       )
Security Administration,         )
                                 )
                Defendant.       )
                                 )

I.    PROCEEDINGS

     Plaintiff seeks review of the Commissioner's final decision
denying her application for Social Security Supplemental Security
Income benefits ("SSI").  The parties consented to the
jurisdiction of the undersigned U.S. Magistrate Judge pursuant to
28 U.S.C. § 636(c).  This matter is before the Court on the
parties' Joint Stipulation, filed October 29, 2012, which the
Court has taken under submission without oral argument.  For the
reasons stated below, the Commissioner's decision is affirmed and
this action is dismissed.

1

## II.   BACKGROUND

Plaintiff was born on September 26, 1957.  (Administrative Record ("AR") 26.)  She has a 12th-grade education.  (AR 28.)  In 1999, Plaintiff worked as a housekeeper for approximately one year.  (AR 28.)  She stopped working in 1999 because she was homeless; she has not worked since.  (AR 28-29.)  On March 4, 2009, Plaintiff filed an application for SSI, alleging a disability onset date of July 1, 2008.  (AR 112.)  Plaintiff claimed to be disabled because of paranoid schizophrenia.  (AR 122.)  Her SSI application was initially denied on April 24, 2009.  (AR 55-59)  Plaintiff then requested reconsideration (AR 60), and on November 10, 2009, her application was denied again (AR 61-65).

After Plaintiff's application was denied a second time, she requested a hearing before an Administrative Law Judge ("ALJ").  (AR 66-68.)  A hearing was held on December 10, 2009, at which Plaintiff, who was represented by counsel, testified on her own behalf.  (AR 22-52.)  Vocational Expert ("VE") Roxane Minkus also testified.  (AR 45-50.)  On February 18, 2011, the ALJ issued a written decision determining that Plaintiff was not disabled.  (AR 8-21.)  On March 21, 2011, Plaintiff requested review of the ALJ's decision denying benefits; she also submitted additional medical evidence for the Appeals Council to review.  (AR 5, 7, 313-422.)  On November 22, 2011, the Appeals Council considered the additional evidence but denied Plaintiff's request for review.  (AR 1-5.)  This action followed.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review

the Commissioner's decision to deny benefits.  The ALJ's findings
and decision should be upheld if they are free of legal error and
are supported by substantial evidence based on the record as a
whole.  § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.
Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481
F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such
evidence as a reasonable person might accept as adequate to
support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter
v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than
a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504
F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880,
882 (9th Cir. 2006)).  To determine whether substantial evidence
supports a finding, the reviewing court "must review the
administrative record as a whole, weighing both the evidence that
supports and the evidence that detracts from the Commissioner's
conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.
1996).  "If the evidence can reasonably support either affirming
or reversing," the reviewing court "may not substitute its
judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social
Security benefits if they are unable to engage in any substantial
gainful activity owing to a physical or mental impairment that is
expected to result in death or which has lasted, or is expected
to last, for a continuous period of at least 12 months.  42
U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257
(9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.   20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.   § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied.   § 416.920(a)(4)(ii).   If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.   § 416.920(a)(4)(iii).   If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied.

[1]RFC is what a claimant can still do despite existing exertional and nonexertional limitations.   20 C.F.R. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

§ 416.920(a)(4)(iv).  The claimant has the burden of proving that she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  <u>Id.</u>  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.  § 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis. § 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

    B.   <u>The ALJ's Application of the Five-Step Process</u>

    At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 4, 2009, the date of her SSI application.  (AR 13.)  At step two, the ALJ concluded that Plaintiff had the severe impairments of "schizophrenia, alcohol abuse, and methamphetamine abuse in remission."  (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 13-14.)  At step four, the ALJ found that Plaintiff was able to perform a full range of work at all exertional levels with the following nonexertional limitations:

> simple routine repetitive tasks, no fast-paced production
> or assembly line requirements such as use of a conveyor
> belt, capable of making simple work-related decisions,
> works better with objects rather than people, but is not
> precluded from working with people, and off task 10
> percent of the day due to auditory hallucinations.

(AR 14.)  Based on the VE's testimony, the ALJ concluded that

5

1   Plaintiff could perform her past relevant work of housekeeper.

2   (AR 17.)  The ALJ also concluded in the alternative that "other

3   jobs" existed in significant numbers in the national economy that

4   Plaintiff could perform, although she did not specify what they

5   were.  (Id.)  Accordingly, the ALJ determined that Plaintiff was

6   not disabled.  (AR 18.)

7   **V.   DISCUSSION**

8        Plaintiff alleges that "the Appeals Council erred by failing

9   to provide any analysis or relevant comment to" the new evidence

10  Plaintiff submitted after the ALJ rendered her decision.  (J.

11  Stip. at 3.)  She also alleges that the ALJ erred in failing to

12  present a "detailed complete" hypothetical to the VE and in

13  evaluating Plaintiff's subjective symptom testimony.  (J. Stip.

14  at 3-4.)[2]  None of these contentions warrant reversal.

15       A.   The Appeals Council's Denial of Review Is Not

16            Reviewable by this Court, and the New Evidence

17            Plaintiff Submitted Does Not Mandate Reversal

18       Plaintiff argues that the Appeals Council erred by failing

19  to "articulate any specific analysis regarding" the new evidence

20  she submitted after the ALJ's decision.  (J. Stip. at 11-14, 17-

21  18.)  Reversal is not warranted on that basis.

22       After the ALJ denied Plaintiff's application for benefits,

23  Plaintiff submitted to the Appeals Council on February 18, 2011,

24  86 pages of treatment records from Oasis Rehabilitation Center

25  and Oasis Crisis Services.  (AR 339-422.)  The records documented

26

27       [2]The Court addresses the arguments raised in the Joint

28  Stipulation in an order different from that used by the parties,
    for clarity and other reasons.

6

Plaintiff's treatment after being hospitalized pursuant to a 5150[3] admission in July 2009 (AR 340-68) and again in April 2011 (AR 369-422).  The Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" and denied Plaintiff's request for review.  (AR 1.)  The Council noted that it had "received additional evidence which it is making part of the record," but it did not otherwise discuss the evidence.  (See AR 5.)

The Court "[does] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action."  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012) (citing Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231 (9th Cir. 2011)).  Thus, to the extent Plaintiff asks this Court to reverse the Appeals Council's denial of review because the Council failed to provide its own independent discussion of the new evidence, the Court lacks jurisdiction to do so.

To the extent Plaintiff argues that the new evidence by

---

[3]California Welfare and Institutions Code § 5150 provides:

> When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation.

itself warrants remand of the ALJ's decision (see J. Stip. at 17-18), it does not. "New and material evidence" that is "submitted to and considered by the Appeals Council is not new but rather is part of the administrative record properly before the district court." Brewes, 682 F.3d at 1164; see also Tackett v. Apfel, 180 F.3d 1094, 1097-98 (9th Cir. 1999). The Court therefore "must" consider that evidence "when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163 (citing Tackett, 180 F.3d at 1097-98). The additional evidence from Oasis Rehabilitation Center and Oasis Crisis Services was made part of the record by the Appeals Council, and therefore the Court must consider it in "determin[ing] whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." Brewes, 682 F.3d at 1163.

The additional evidence from July 2009 documenting Plaintiff's 5150 hospitalization and treatment related to the period before the ALJ's February 18, 2011 decision, and therefore it is "material" evidence. See id. at 1162 ("The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." (citation omitted)). Plaintiff argues that it warrants reversal because it shows that her Global Assessment of Functioning ("GAF") score was 20 upon admission to the hospital in July 2009 and 40 upon discharge, and her highest GAF score in

the "past year" was 45.[4]  (J. Stip. at 12.)  But as discussed
more fully below, the July 2009 evidence was consistent with the
evidence before the ALJ, which showed that Plaintiff's symptoms
appeared to worsen only when she stopped taking her medications
and were well-controlled when she did take her medications.
(See AR 366.)  Her low GAF score in July 2009, when she had not
taken her medications for almost two weeks (see AR 367), was
likely a reflection of that, as examinations performed at times
Plaintiff was compliant with her medications revealed fewer
symptoms (see AR 214-20, 367) and higher GAF scores (see AR 261).
Moreover, GAF scores "[do] not have a direct correlation to the
severity requirements in the Social Security Administration's
mental disorders listings," and an ALJ may properly disregard a
low GAF score if other substantial evidence supports a finding
that the claimant was not disabled.  See Doney v. Astrue, 485 F.
App'x 163, 165 (9th Cir. 2012) (alterations and citations
omitted).  Indeed, given the evidence in the record that
Plaintiff's functioning improved with treatment, the ALJ likely
would have disregarded the July 2009 GAF scores, as they were
assessed at a time Plaintiff was not taking her medications.  The
July 2009 treatment records therefore do not warrant reversal of
the ALJ's decision.  See Marin v. Astrue, No. CV 11-09331 AJW,

---

[4]A GAF score of 20 indicates "[s]ome danger of hurting self or
others," "occasionally fail[ing] to maintain minimal personal
hygiene," or "gross impairment in communication."  (J. Stip.
Attach. 1.)  A GAF score of 40 indicates "[s]ome impairment in
reality testing or communication . . . OR major impairment in
several areas, such as work or school, family relations, judgment,
thinking or mood."  (Id.)  A GAF score of 45 indicates "serious
symptoms ([e.g.] suicidal ideation . . .) OR any serious impairment
in social, occupational or school functioning."  (Id.)

2012 WL 5381374, at *6 (C.D. Cal. Oct. 31, 2012) (declining to reverse when new evidence submitted to Appeals Council "does not alter the conclusion that the ALJ's decision was supported by substantial evidence in the record as a whole"); cf. Warner v. Astrue, 859 F. Supp. 2d 1107, 1117 (C.D. Cal. 2012) (remanding because "there is a substantial likelihood the ALJ's consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis").

The additional evidence from April 2011 also does not warrant reversal because it postdated the ALJ's decision. Although Plaintiff claims that it is relevant to the period on or before the hearing date because the commitment occurred "just 2 months after the decision" (J. Stip. at 14), nothing in the evidence contains a retrospective assessment of Plaintiff's condition before the date of the ALJ's decision.  (See AR 369-422.)  Indeed, Plaintiff does not point to any portions of the April 2011 evidence that she contends retrospectively analyze her condition.  (See J. Stip. at 13-14, 17-18.)  Thus, it is not "material" evidence, and the Court must give it little weight in reviewing the ALJ's decision.  See 20 C.F.R. § 416.1470(b) ("[I]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the hearing date of the administrative law judge hearing decision."); cf. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) (holding that "reports containing observations made after the period for disability" that retrospectively analyze the claimant's pre-expiration condition "are relevant to assess the claimant's disability").

10

B.   The ALJ Did Not Present an Improper Hypothetical to the
     VE

Plaintiff contends that the ALJ erred in presenting a
hypothetical to the VE that assumed that Plaintiff would be "off
task" 10% of the day and in accepting the VE's testimony that
Plaintiff could nonetheless perform the job of housekeeper.  (J.
Stip. at 4-5.)  Plaintiff also argues that the ALJ erred because
she failed to obtain an explanation from the VE as to why any
employer would allow a schizophrenic suffering auditory
hallucinations to work in his or her home.  (J. Stip. at 5-6.)

An ALJ must ask a hypothetical question to a VE that is
based on medical assumptions supported by substantial evidence in
the record and that reflects all the plaintiff's limitations.
Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  If the
ALJ's hypothetical "contained all of the limitations that the ALJ
found credible and supported by substantial evidence in the
record," the ALJ may properly rely on the testimony the VE gives
in response to the hypothetical in formulating an RFC assessment.
Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

At the hearing, the ALJ posed the following hypotheticals to
the VE:

Q.   . . . .  Assume the existence of an individual who
     is 51 years old as of the date of the Title XVI
     application, has at least a high school education,
     and a vocational background as a housekeeper in a
     hotel.  Further assume that such an individual has
     no exertional limitations; however, due to a low
     tolerance for stress, would be limited to simple,

11

1        routine, repetitive tasks, and a work environment
2        free of fast-paced production or assembly line
3        requirements, as in use of a conveyor belt.
4        However, such an individual would remain capable of
5        performing simple work – making simple work-related
6        decisions.  In addition, such an individual would
7        work better with objects or things rather than
8        people, but such interaction would not [be]
9        precluded.  Would such an individual be able to
10       perform the claimant's past work?

11  A.   Yes.

12  Q.   Hypothetical two: assume an individual of the same
13       age, education, and vocational background as the
14       claimant with the limitations cited in hypothetical
15       one with the following addition[al] limitation.
16       Assume that such an individual would be off task
17       about 10 percent of the day due to auditory
18       hallucinations.  Would such an individual be able
19       to perform the claimant's past work?

20  A.   I think yes, with some erosion, yes.

21  Q.   Okay, and what would that erosion be?

22  A.   I would erode the job base approximately 20
23       percent.  I do think that this is one of the
24       occupations that accommodates some flexibility, as
25       long as the work is done at the end of the day.  So
26       I would simply erode about 20 percent.

27  (AR 45-47.)

28     The ALJ's hypothetical was supported by substantial evidence

in the record.  To the extent Plaintiff claims that her RFC
should have been further restricted because of her schizophrenia
and auditory hallucinations, she does not cite to any evidence in
the record that would warrant imposing further restrictions.
(See J. Stip. at 6.)  The record showed that, throughout 2009 and
2010, when Plaintiff took her medications her condition remained
"stable" and she exhibited appropriate mood, affect, speech,
appearance, and concentration.  (See AR 214, 217, 314-19.)  A
psychiatric evaluation performed in April 2009 by consulting
psychiatrist N. Haroun showed that Plaintiff had no restriction
of activities of daily living or difficulties maintaining social
functioning, and moderate difficulties in maintaining
concentration, persistence, or pace.  (AR 302.)  Dr. Haroun found
that Plaintiff was capable of understanding simple instructions,
performing simple tasks, and working with others.  (See AR 304-
07.)  Plaintiff and her boyfriend both reported that she was able
to follow instructions and respond to authority figures well.
(AR 139-40, 147-48.)  The periods of time when Plaintiff's
symptoms worsened appear to be when she did not take her
medications (see AR 224-44 (detailing decline in mental health
status from September to December 2008 after Plaintiff "stopped
meds"); AR 367 (July 2009 hospitalization notes, noting that
Plaintiff "had run out of [medication] for approximately 10 to 14
days prior to admission," which was "most likely responsible for
[her] increased agitation")); when Plaintiff took her
medications, her symptoms improved (see AR 214-20 (January to
March 2009, showing improved mental health status); AR 367
(noting that "[a]t the time of discharge," after taking

medications, Plaintiff "demonstrated adequate grooming [and] good
eye contact," "was calm and less anxious and restless," "had no
complaints of tremors or shakiness," and "said auditory
hallucinations were significantly diminished and she felt
prepared to return home")).  The ALJ was entitled to consider the
effectiveness of medication in controlling Plaintiff's symptoms
in formulating her RFC assessment.  See 20 C.F.R.
§ 416.929(c)(4)(iv) (ALJ may consider effectiveness of medication
in evaluating severity and limiting effects of an impairment);
Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ
may consider plaintiff's response to treatment in finding
plaintiff not disabled).  The ALJ's hypothetical, which accounted
for her continuing schizophrenia symptoms by limiting her to
simple, routine, repetitive tasks and recognizing that she may be
distracted by auditory hallucinations a small percentage of the
time, was thus supported by substantial evidence.

        The VE's response to the hypothetical was also proper.
Plaintiff argues that the VE's testimony that she could perform
the job of housekeeper despite being off task 10% of the day
conflicts with the Dictionary of Occupational Titles' ("DOT")
description of the housekeeper job, but she does not cite any
specific provisions of the DOT to support her argument.  (See J.
Stip. at 5-6.)  The DOT does not state that a housekeeper must be
on task 100% of the day.  See DOT 323.687-014 (Cleaner,
Housekeeping), 1991 WL 672783.  To the extent such a requirement
is "implicit" in the DOT, as Plaintiff seems to argue (J. Stip.
at 9-10), the VE's testimony was sufficient to resolve any
conflict.

When a VE provides evidence about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the DOT.  See SSR 00-4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that application of SSR 00-4p is mandatory). An ALJ's failure to do so is procedural error, but the error is harmless if no actual conflict existed or the VE provided sufficient evidence to support the conclusion.  Massachi, 486 F.3d at 1154 n.19.  The VE testified that the housekeeper position "accommodate[d] some flexibility, as long as the work is done at the end of the day."[5]  (AR 46-47.)  Thus, to the extent a conflict existed between the VE's testimony and the DOT with respect to whether Plaintiff could perform the housekeeper job if she was off task 10% of the day, the VE sufficiently resolved it. The ALJ was entitled to rely on the VE's explanation.  See Bayliss, 427 F.3d at 1218 (holding that "[a] VE's recognized expertise provides the necessary foundation for his or her testimony," and "no additional foundation is required").

Plaintiff's contention that no employer would hire a housekeeper suffering from schizophrenia and auditory

_____

[5]Plaintiff appears to misapprehend the VE's use of the phrase "at the end of the day."  She appears to interpret it as meaning that Plaintiff would somehow have magically completed all her work at the conclusion of her eight-hour workday, even though she was off task 10% of the time.  (See J. Stip. at 4.)  Read in context, however, it is clear that the VE meant that Plaintiff could be off task for 10% of the day "as long as the work is done at the end of the day," meaning as long as the work ultimately was completed before Plaintiff went home for the day.  (See AR 46-47.)  As noted, she further testified that housekeeping jobs allowed for such "flexibility."  (AR 46.)

1  hallucinations (J. Stip. at 6) is also not supported by the
2  record.  Plaintiff does not cite any evidence or case law in
3  support of this argument.  (See id.)  Her own lay understanding
4  of what an employer might look for in hiring a housekeeper is
5  insufficient to support reversal of the ALJ's opinion.  Moreover,
6  the VE considered the existence of auditory hallucinations and
7  found that it would erode the job base by 20% (AR 46-47), and
8  Plaintiff does not claim that an insufficient number of positions
9  remained (see J. Stip. at 5-6, 9-10).

10      In sum, because the ALJ's hypothetical to the VE was
11  supported by substantial evidence, reversal is not warranted on
12  this basis.

13      C.  The ALJ Did Not Err in Evaluating Plaintiff's Testimony
14      Plaintiff asserts that the ALJ did not provide clear and
15  convincing reasons for rejecting her testimony as to the "degree
16  of limitations" of her impairment.  (J. Stip. at 18-22, 24-25.)
17  Because the ALJ did provide clear and convincing reasons
18  supporting her evaluation of Plaintiff's testimony and they were
19  supported by substantial evidence in the record, reversal is not
20  warranted on this basis.

21      An ALJ's assessment of pain severity and claimant
22  credibility is entitled to "great weight."  See Weetman v.
23  Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
24  F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
25  believe every allegation of disabling pain, or else disability
26  benefits would be available for the asking, a result plainly
27  contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674
28  F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and

16

citation omitted).   In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged."  Id. at 1036 (internal quotation marks omitted).  If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).  When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent affirmative evidence of malingering, those findings must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Lester, 81 F.3d at 834.  If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing."  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

At the hearing, Plaintiff testified that she last worked as a housekeeper in 1999 and stopped working after that because she "became homeless" and "it was kind of hard to work."  (AR 28.) She testified that her typical day consisted of staying home[6] and

_____

[6]At the time of the hearing Plaintiff was not homeless, as she lived with her boyfriend in a house and had been with him "off and on, for about 14 years."  (AR 26, 142.)

17

watching television and that she went to the grocery store approximately once every three days; she was able to get around by riding a bicycle or using public transportation.  (AR 29-30.) She testified that she had no difficulty attending to her personal needs or doing housekeeping, and she did the grocery shopping and cooking for the household.  (AR 30-31.)  She claimed that she was unable to work because of "a lack of concentration" and hearing voices that "confused" her.  (AR 33.)  She stated that she heard voices "every day" and that sometimes she had trouble going out in public because she thought people were talking about her.  (AR 34, 43-44.)

On March 26, 2009, Plaintiff filled out an Adult Function Report stating that her daily activities included making coffee and breakfast in the morning, showering, going for a bike ride, watching TV, cleaning the house, watering plants, and cooking lunch and dinner.  (AR 142.)  She stated that because of hearing voices she was unable to "think straight" or do chores without interruption from the voices, but she noted that she could get around, take care of shopping and personal needs, and manage money on her own.  (AR 143-45.)  She stated that she did not "go out [too] much now" because "[s]ometimes I think people are talking about me."  (AR 147.)  She stated that her ability to follow written and spoken instructions and interact with authority figures was "good," but she did not handle stress or changes in routine well.  (AR 147-48.)  Her boyfriend, Henry Gonzalez, filled out a third-party report, giving substantially similar answers.  (AR 134-41.)

In her written opinion, the ALJ found that to the extent

Plaintiff claimed that her ability to work was more restricted than the ALJ found, it was not credible.  (AR 16-17.)  The ALJ provided a detailed summary of the evidence of record, noting that substantial evidence showed that Plaintiff had no trouble caring for herself, getting around town, or performing household chores; her symptoms improved when she was compliant with prescribed medications; and the times when Plaintiff's symptoms worsened corresponded to times when she was noncompliant with her medications.  (AR 15-16.)

Reversal is not warranted based on the ALJ's alleged failure to make proper credibility findings or properly consider Plaintiff's subjective symptoms.  Contrary to Plaintiff's arguments, the ALJ provided specific reasons for rejecting Plaintiff's credibility: substantial medical evidence showed that her symptoms were well controlled with medication, and her daily activities were inconsistent with the level of disability she alleged.  (Id.)

Substantial evidence supports the ALJ's findings.  As noted above, the record showed that, throughout 2009 and 2010, when Plaintiff took her medications her condition remained "stable" and she exhibited appropriate mood, affect, speech, appearance, and concentration.  (See AR 214, 217, 314-19.)  The psychiatrist who examined Plaintiff concluded that she had the residual functional capacity to perform simple, repetitive tasks.  (AR 302.)  Indeed, no doctor ever concluded that Plaintiff was unable to work.  Plaintiff herself admitted that she had no trouble following instructions and interacting with authority figures, and her boyfriend said the same.  (AR 139-40, 147-48.)

Plaintiff's symptoms appeared to worsen only when she did not take her medications (see AR 224-44, 367), and when she then took her medications, her symptoms improved (see AR 214-220, 367). The ALJ's evaluation of Plaintiff's subjective symptom testimony was therefore proper.  See, e.g., 20 C.F.R. § 416.929(c)(4)(iv) (ALJ may consider effectiveness of medication in evaluating severity and limiting effects of an impairment); SSR 96-7p, 1996 WL 374186, at *6 ("medical signs and laboratory findings that . . . demonstrate worsening or improvement of the underlying medical condition . . . may also help an adjudicator to draw appropriate inferences about the credibility of an individual's statements"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that "contradictions between claimant's testimony and the relevant medical evidence" provided clear and convincing reason for ALJ to reject plaintiff's subjective symptom testimony).

The ALJ's finding that Plaintiff's testimony conflicted with her daily activities was also proper.  Although it is true that "one does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001), the extent of Plaintiff's activities here supports the ALJ's finding that Plaintiff's reports of her impairment were not fully credible.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597,

20

604 (9th Cir. 1989)).  The ALJ properly noted that Plaintiff's ability to do such daily activities as cooking, cleaning, riding a bicycle, taking public transportation, and grocery shopping for herself and her boyfriend, all of which require at least some degree of concentration, indicated that she had the ability to perform at least simple, repetitive tasks.  (AR 15-17.)  The ALJ thus did not materially err in assessing Plaintiff's credibility, and reversal is not warranted on this basis.

**VI.   CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[7] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 17, 2013

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[7]This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."